UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**BOSE CORPORATION,**               )
                                    )
    **Plaintiff and**           )
    **Counterclaim Defendant,**  )
                                    )
    v.                          )    Civil Action No. 11-10629-DJC
                                    )
**SALMAN EJAZ,**                    )
                                    )
    **Defendant and**            )
    **Counterclaim Plaintiff.**  )
_____ )

## STATEMENT OF REASONS

**CASPER, J.**    November 7, 2011

### I. Introduction

Plaintiff Bose Corporation ("Bose"), located in Massachusetts, makes home theater products, including DVD players, that are "region coded" (i.e., designed so that DVD players marketed and sold in a certain geographic region are technologically designed to be compatible only with DVDs designed for use in that region). Defendant Salman Ejaz ("Ejaz") operates a New Jersey business buying electronics and reselling them on the online auction site eBay. Bose initiated this lawsuit against Ejaz in the Massachusetts Superior Court, alleging that Ejaz had been using eBay to sell in Australia products designed by Bose for use in the United States and claiming that in so doing Ejaz was in violation of their earlier settlement agreement as well as in violation of state and federal trademark law and Massachusetts consumer protection law. The state court issued temporary injunctive relief ordering Paypal, the service through which purchasers on eBay paid Ejaz, to freeze the assets of any account held by Ejaz. Ejaz then removed the case to this Court and counter-

1

claimed that Bose had interfered with Ejaz's advantageous business relations and that Bose was in violation of Mass. Gen. L. c. 93A.

Bose has moved to dismiss Ejaz's counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, Bose's Motion to Dismiss is GRANTED.

## II. Burden of Proof and Standard of Review

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a counterclaim must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "The Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the counterclaim and matters of which judicial notice can be taken." W. World Ins. Co., Inc. v. Czech, 275 F.R.D. 59, 61 (D. Mass. 2011) (citing Nollet v. Justices of the Trial Court of Mass., 83 F.Supp.2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000)). "Furthermore, the Court must accept all factual allegations in the counterclaim as true and draw all reasonable inferences in the counterclaimant's favor." Id. (citing Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000)). "If the facts in the counterclaim are sufficient to state a cause of action, a motion to dismiss must be denied." Id.

## III. Factual Allegations and Procedural History

Ejaz operates a business buying electronics either directly from manufacturers or from re-sellers and re-selling those electronics on the internet auction site eBay, with the transfer of funds managed by the internet site PayPal. Counterclaim, D. 19 at ¶¶ 5-6, 12.[1] On January 27, 2007,

---

[1]The factual allegations recited below come either from Ejaz's counterclaim or his answer, both docketed at D. 19, from aspects of Bose's complaint, D. 1, that are referred to in and relied upon by Ejaz's counterclaim or answer, or from the state court record docketed with

2

pursuant to proceedings brought against Ejaz by Bose in the Chancery Division of the High Court of Justice of the Courts of England and Wales, and based on representations made to Ejaz by Bose's counsel, Ejaz signed a settlement agreement wherein "Ejaz . . . agree[d] to abstain from engaging in manufacturing, advertising, selling, offering for sale, distributing, producing, shipping, altering, modifying, packaging or in any way trading in items bearing a BOSE trademark, copyright or any items confusingly similar thereto, either domestically (within the United States of America) or abroad, without first obtaining the express written consent of Bose . . . ." January 27, 2007 Release and Settlement Agreement, Exh. A to the Compl., D. 1-1 at 16 (Counterclaim at D. 19 ¶¶ 13-17, 19, 22).[2]

In "late 2010," Ejaz bought several Bose electronic systems and resold them, via eBay, in Australia, Counterclaim, D. 19 ¶¶ 21-22, and also "made a few isolated sales of Bose products in the United States." Answer, D. 19 ¶ 28.

On March 31, 2011, Bose filed the instant action in Superior Court, alleging that by selling Bose products Ejaz had breached his settlement agreement and had violated Bose's trademark rights and Mass. Gen. L. c. 93A. Compl., D. 1 ¶¶ 32-48 (referred to in the Counterclaim at D. 19 ¶ 24). Bose sought emergency relief, asserting that "[d]ue to experiences with Ejaz in previous lawsuits filed against him by Bose," Bose believed that "without a temporary restraining order and an asset restraining order, Ejaz will remove assets to a foreign account and render all equitable accounting

---

this Court after this case was removed. D. 10.

[2]Ejaz asserts that he "understood at the time that he was agreeing to refrain from marketing Bose products in the European Union" and that he "did not understand that he had agreed to refrain from sales of any Bose products anywhere in the world," but he does not contest the content of the settlement agreement itself. Counterclaim, D. 19 at ¶¶ 17-18.

3

meaningless." Affidavit of Bose Counsel Jason Stephen, Exh. A to the Compl., D. 1-1 at 24 (filing in the state court proceedings referred to in the Counterclaim at D. 19 ¶ 24).

On April 4, 2011, the Superior Court (Murtagh, J.) issued two orders: an ex parte temporary restraining order requiring Ejaz "to cease and desist from further selling and exporting Bose products to customers outside the United States and Canada, including, but not limited to, Australia and the European Union," April 4, 2011 Injunctive Order, Exh. A to the Compl., D. 1-1 at 26 (filing in the proceedings referred to in the Counterclaim at D. 19 ¶ 24) ("TRO") and an ex parte asset restraining order requiring PayPal to "freeze the assets and/or prohibit the removal of any assets from within the PayPal account held by Salman Ejaz" and preserve all evidence relating to Ejaz's PayPal transactions. April 4, 2011 Asset Restraining Order, Exh. A to the Compl., D. 1-1 at 28-29 (referred to in the Counterclaim at D. 19 ¶ 24) ("ARO"). The Superior Court scheduled a hearing on April 14, 2011 to determine whether its April 4 Orders "sh[ould] be extended into a Preliminary Injunction." Id.

PayPal subsequently froze Ejaz's United Kingdom and Australian PayPal accounts, as well as his wife's account. Counterclaim, D. 19 ¶ 27. Ejaz asserts that this action "precluded [him] from conducting his business, and his customers were blocked from making any purchases from him, because his entire account was frozen." Counterclaim, D. 19 ¶ 27-28.

On April 12, 2011, Ejaz and Bose jointly moved to dissolve the ARO directed at PayPal. Superior Court Docket, D. 10 at 4. The motion did not affect the TRO against Ejaz. Id. The Superior Court allowed the motion but kept the April 14, 2011 hearing date in place. Id. On April 13, 2011, one day before the scheduled hearing in Superior Court, Ejaz removed the instant case to this Court.

4

On April 29, 2011, Ejaz filed his answer and included a counterclaim against Bose alleging one count of interference with advantageous business relations and one count of violating Mass Gen. L. c. 93A. Bose amended its complaint on August 3, 2011 and on August 17, 2011 Ejaz accordingly amended his answer, but maintained his counterclaim.

On September 6, 2011 Bose moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Ejaz's counterclaim. The Court held a hearing on the motion on October 28, 2011. At the conclusion of the hearing, the Court granted the motion and stated that it would issue a written statement of reasons soon after the hearing.

## IV. Discussion

### A. Interference with Advantageous Business Relations

Under Massachusetts law, the four elements of the tort of interference with advantageous business relations are (1) "the existence of a contract or a business relationship which contemplated economic benefit" for the claimant; (2) "the defendants' knowledge of the contract or business relationship"; (3) "the defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means"; and (4) damages. Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 397 (1996). Additionally, Massachusetts law privileges statements made "by an attorney engaged in his function as an attorney . . . [in the] conduct of litigation," Sriberg v. Raymond, 370 Mass. 105, 109 (1976), and one consequence of this "litigation privilege" is that "the filing of a complaint is privileged [under state law] and thus that act, alone, is insufficient to form the basis of a counterclaim for tortious interference." Int'l Floor Crafts, Inc. v. Adams, 477 F.Supp.2d 336, 340 (D. Mass. 2007). "The litigation privilege bars a counterclaim for tortious interference that is based upon an allegation that the filing of this suit was itself an improper means

5

of interference. A party can, however, be held liable for tortious interference on the basis of the filing of a lawsuit if it is alleged that the suit was filed for the ulterior purpose of interfering with a prospective business relationship." Id. (emphasis in original). Thus, "[i]n order to survive a motion to dismiss, a counter-claimant alleging tortious interference on the basis of the underlying lawsuit must plead that the suit was commenced for the ulterior motive of interfering with a prospective business relationship." Id.

Ejaz's counterclaim alleges that Bose is "aware of the fact that freezing a seller's PayPal account not only limits the seller's access to his or her funds, but prevents buyers from purchasing any product from the seller using PayPal," Counterclaim, D. 19 at ¶ 25, that Bose "knew or could have easily ascertained that none of the products listed for sale on [Ejaz]'s eBay auctions at the time of the [A]RO[3] were Bose products," id. at ¶ 26, and that "Bose had no reasonable basis to believe that bringing Mr. Ejaz's other, unrelated business to a halt was necessary to achieve any legitimate litigation purpose, and obtained th[e asset restraining] order solely in order to put pressure on Mr. Ejaz to enter into a[] coerced agreement." Id. at ¶ 30; see id. at ¶ 37 (stating that Bose's alleged "interference was done for an improper purpose, including without limitation interference with competition in the marketplace, and the misappropriation of Mr. Ejaz's goodwill and customer relationships"); ¶ 41 (characterizing "[t]he actions of Bose . . . including without limitation the

---

[3]Although the Counterclaim uses the term"TRO" in paragraph 26 and "temporary restraining order" in paragraph 24, the terms as used therein appear to refer to the ARO rather than the TRO. Compare Counterclaim, D. 19 ¶ 24 ("Upon filing this lawsuit, Bose obtained an ex parte temporary restraining order requiring PayPal to '[f]reeze the assets and/or prohibit the removal of any assets from within the PayPal account held by Salman Ejaz'") with ARO, D. 1-1 at 28-29 (referred to in the Counterclaim at D. 19 ¶ 24) (directed at PayPal and containing the text quoted by Ejaz in the Counterclaim); TRO, D. 1-1 at 26 (directed at Ejaz and omitting the text quoted by Ejaz in the Counterclaim).

communications from Bose to Paypal, any actions by Bose in connection with the invalid and unenforceable Agreement . . . and actions in connection with this litigation" as "actions in furtherance of an unlawful restraint of trade").

These allegations are conclusory. Ejaz's counterclaim points to no facts in support of his allegation that Bose is acting with an ulterior motive other than the existence of legal proceedings between Bose and Ejaz in both England and Massachusetts. To the contrary, Ejaz concedes that he sold Bose products in the United States and Australia in late 2010 - conduct that is expressly forbidden by the January 27, 2007 Release and Settlement Agreement Ejaz signed and that clearly establishes a legitimate reason for Bose to file the instant breach of settlement suit. "[H]aving essentially admitted facts sufficient to support [the] claim" underlying Bose's complaint, Ejaz "cannot now claim that Bose's lawsuit is baseless and filed only to stifle legitimate competition" absent specific facts in support of an allegation of ulterior motive. Bose BV v. Zavala, 2010 WL 2733621, at *1 (D. Mass. July 8, 2010).

Ejaz challenges the "premise that the conduct alleged in [his] counterclaim[] is limited to the act of filing the instant lawsuit." Def. Opp., D. 26 at 1. Instead, he argues in his brief that "Ejaz's counterclaims are based in part on the allegation that Bose has systematically and intentionally used legal process over a period of years, here and in the United Kingdom, as part of a strategy to intimidate and constrain smaller internet marketers like . . . Ejaz[4] who create price competition with Bose in the marketplace," via methods including not only the instant lawsuit but also "its use of misrepresentations and coercion to get . . . Ejaz to sign agreements to refrain from otherwise lawful

---

[4]Ejaz's counterclaim (as opposed to his subsequent briefing to this Court) does not include allegations about Bose's conduct with regard to any "smaller internet marketers" other than Ejaz himself. D. 19 ¶¶ 1-42.

7

activities." Id. But Ejaz's counterclaim does not allege that Bose made any misrepresentations to Ejaz, see Counterclaim, D. 19 ¶¶ 14-15, 18 (stating that Bose made "representations" to Ejaz "about the civil and criminal penalties he might face if he did not sign a settlement agreement" and that Ejaz "did not understand [w]hat he had agreed to" but nowhere alleging that the representations were false), nor does the counterclaim allege that the suit filed by Bose in the English Chancery Court lacked legal merit, id. at ¶¶ 13-38, nor does it include any factual allegations that would support a conclusion that Bose was motivated by an improper purpose in pressing its Chancery Court suit or the resulting January 27, 2007 Release and Settlement Agreement that restricted only Ejaz's conduct and was not directed in any way at PayPal or eBay. Id. at ¶¶ 13-18. In sum, the allegations in Ejaz's counterclaim with regard to either the instant suit or the prior proceedings in English Chancery Court are insufficient to state a plausible claim for tortious interference.

**B. Mass Gen. L. c. 93A**

Chapter 93A provides a private cause of action for "any person . . . who has been injured by another person's use or employment of" an unfair or deceptive act or practice. Mass. Gen. L. c. 93A, § 9. "A practice is unfair if it is within . . . the penumbra of some common-law, statutory, or other established concept of unfairness; . . . is immoral, unethical, oppressive, or unscrupulous . . . ." Blue Hills Office Park LLC v. J.P. Morgan Chase Bank, 477 F.Supp.2d 366, 376 (D. Mass. 2007) (internal citations and quotations omitted). "[F]iling [a] legal claim which proves baseless [is] not in itself an unfair trade practice [under c. 93A], except where [the] claim [is] brought with [an] ulterior motive." Ne. Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co., 986 F.2d 607, 611 (1st Cir. 1993) (summarizing Quaker State Oil Refining v. Garrity Oil Co., 884 F.2d 1510, 1514 (1st Cir. 1989) and cases cited therein).

Here, the 93A claim in Ejaz's counterclaim is based on the identical factual allegations as those underlying his tortious interference with business relations claim. Counterclaim, D. 19 ¶¶ 39-42. As discussed above, Ejaz at no point alleges that the legal proceedings initiated by Bose were baseless and does not plausibly allege that they were brought with an ulterior motive. Ejaz's counterclaim makes no other allegations of unfair or deceptive practices by Bose. Accordingly, Ejaz's counterclaim fails to state a plausible 93A claim.[5]

## V. Conclusion

For the reasons discussed above, Bose's Motion to Dismiss is GRANTED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge

---

[5] At the October 28, 2011 hearing, counsel for the parties disagreed as to whether Bose and Ejaz were in a "business relationship" in the 93A context. Because Ejaz's c. 93A counterclaim can be disposed of because of its lack of factual sufficiency, at this point the Court does not need to characterize the nature of the relationship between Bose and Ejaz.